Filed 3/14/22  In re Victor S. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re VICTOR S., JR. et al., Persons Coming Under the Juvenile Court Law. | B313951 (Los Angeles County Super. Ct. No. 20CCJP02743A-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. VICTOR S., Defendant and Appellant. | |

APPEAL from orders of the Los Angeles County Superior Court, Nichelle L. Blackwell, Juvenile Court Referee.  Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

The juvenile court issued custody and visitation orders at termination of dependency proceedings awarding Victor S.'s former wife, Leticia R., sole legal and physical custody of their four children and restricting Victor to monitored visitation. On appeal Victor contends his lack of participation in a drug program with testing was an insufficient basis to modify a 2017 family law order providing for joint legal and physical custody. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Sustained Dependency Petition*

On December 18, 2020 the juvenile court sustained an amended dependency petition pursuant to Welfare and Institutions Code section 300, subdivision (b)(1),[1] finding that Victor had a limited ability to provide now-15-year-old Victor S., Jr., who is autistic and has been diagnosed with depression and anxiety, with ongoing care and supervision due to the child's mental and emotional problems and that Victor's limitations created a substantial risk of serious physical harm to Victor, Jr. and to his three siblings, 14-year-old Daisy S., seven-year-old Kristopher S. and five-year-old Frank S. (The findings as to Daisy, Kristopher and Frank were made pursuant to section 300, subdivision (j), as well as subdivision (b)(1).) The court also sustained an allegation pursuant to section 300, subdivision (c), as to Victor, Jr. that the parents' ongoing conflict and Victor's emotional abuse of Victor, Jr. placed the child at substantial risk of suffering serious emotional harm.

The court declared Victor, Jr., Daisy, Kristopher and Frank dependent children of the court, removed them from Victor's

---

[1] Statutory references are to this code.

custody and placed them with Leticia under the supervision of the Los Angeles County Department of Children and Family Services. The court ordered family maintenance services for Leticia and enhancement services for Victor, including a full drug and alcohol program with aftercare, random weekly drug or alcohol testing, a 12-step program with a court card and sponsor, parenting classes, individual counseling and mental health counseling, with requirements to submit to a psychiatric evaluation and take prescribed psychotropic medications. The court restricted Victor to monitored visitation with his three sons for nine hours per week and suspended his visitation with Daisy until her therapist determined it was appropriate.

We affirmed the jurisdiction findings under section 300, subdivisions (b)(1) and (j), on appeal. (*In re Victor S., Jr.* (Oct. 26, 2021, B310088) [nonpub. opn.].)[2] As we explained, the record before the juvenile court established that Victor, Jr. required therapy for his depression; had a history of suicidal ideations; had taken steps to act on those thoughts of suicide, including grabbing a knife in one instance and, in another, stepping out of a hotel room to peer over the balcony after he had declared his desire to jump; and had been hospitalized for suicidal thoughts less than a year before the December 2020 jurisdiction and disposition hearing. In addition, his parents' conflict had caused

---

[2] Because we upheld the jurisdiction finding as to Victor, Jr. under section 300, subdivision (b)(1), it was unnecessary to address the additional finding under section 300, subdivision (c). In addition, in light of the juvenile court's order terminating its jurisdiction and issuing the custody order while Victor's appeal of the jurisdiction findings and disposition order was pending, we dismissed his challenge to the disposition order as moot.

him to feel emotionally overwhelmed, and he admitted having suicidal thoughts if he had a significant argument with his father.

For his part, Victor had been diagnosed with anxiety and depression, received mental health services requiring medication, had a history of substance abuse and failed to submit to any of multiple court-ordered random drug or alcohol testing. There was ample other evidence in the record that Victor had an impaired capacity to appropriately manage his emotions and temper his behavior, which limited his ability to provide the ongoing care and supervision required in light of Victor, Jr.'s mental and emotional needs. The record also demonstrated that Victor lacked insight regarding the effect on his children of his ongoing rancorous verbal altercations with Leticia in the children's presence, even though such conflict emotionally destabilized Victor, Jr.

As to Daisy, Kristopher and Frank, we held the record supported the finding that Victor's impaired capacity to moderate his emotional responses and behavior rendered him unable to adequately protect, and created a substantial risk of serious physical harm to, not only Victor, Jr., but also his three younger children. All four children had observed and been upset by the parents' repeated verbal arguments. Daisy was diagnosed with depression and saw a therapist once a week. Although she never witnessed her parents hit or push each other, she heard them arguing, which she said was most of the time they talked to each other. Daisy's troubled relationship with Victor was due to a history of concerning incidents that included an occasion when he showed Daisy and the two younger boys a gun, stating his intent

4

to kill the maternal family with it and saying Daisy had to choose who to kill.

> 2. *The Section 364 Review Hearing, Termination of Jurisdiction and Entry of the Juvenile Court Custody and Visitation Orders*

In its status review report for the initial section 364 review hearing, scheduled at disposition for June 17, 2021, the Department summarized Leticia's successful completion of court-ordered programs and voluntary participation in additional services and stated Victor, Jr. was thriving in her care. Victor, Jr. had enrolled in wraparound services in December 2020, which provided him with weekly individual therapy. Leticia participated by attending weekly sessions and bi-weekly meetings, while Victor only participated in two meetings. The wraparound team also provided Leticia and Victor, Jr. with conjoint sessions, which had been going well. The team agreed with the Department's recommendation that the children continue residing with Leticia. In contrast, because of Victor's temperament, he had a fraught relationship with service providers including Victor, Jr.'s wraparound team, whom Victor admitted "going off" on.

Victor was not enrolled in a drug treatment program. Throughout the reporting period Victor said he did not feel it was necessary to enroll in a program because he was not using drugs and had been sober for more than 20 years. In addition, Victor did not show up for random drug/alcohol testing despite the Department's continuing efforts to encourage him to test. Although the Department had referred Victor for weekly testing since May 2020, he was a "no show" at least 32 times from May 27, 2020 until the most recent drug/alcohol test date of June 2, 2021.

As for the court's order he attend a 12-step program with a court card and sponsor, Victor told the Department, and his sponsor confirmed, he had been attending Alcoholics Anonymous/Narcotics Anonymous meetings two or three times a week since October 2020 but had been unable to obtain a stamped attendance card because the meetings took place virtually. His sponsor, in declining to monitor Victor's visits with his children, stated, "If he did things right, I would not mind helping him but he is not." She explained Victor did not associate with the right people and was not drug testing as he should, and she was also afraid Victor "may want to seek payback" if something went wrong during a visit that required her to report it to the Department.

Victor enrolled in weekly individual counseling services. His therapist provided a progress letter stating Victor met the criteria for a mental health disorder as defined in the Diagnostic and Statistical Manual, Fifth Edition (DSM-5) and, due to that diagnosis, Victor's psychological condition was "disabling insofar as it significantly limits at least one activity of daily living." She could not disclose whether he was taking psychotropic medication. Although it appeared Victor had made some progress in individual counseling sessions and he had completed his parenting program, the Department believed he could benefit from ongoing individual counseling services in part to address his anger management issues.

Daisy's therapist met with Victor twice and described the first session as intense. Victor had been "very intimidating" and made the session very difficult. She was unsure whether Victor was stable and did not believe he was ready for conjoint sessions. The therapist was uncertain how many more sessions Victor

would need before she would be comfortable providing joint sessions with him.

Victor, who was unemployed, only visited his children once a week for an average of four hours despite the court's authorization of nine-hour monitored weekly visits. A Department social worker offered to monitor a visit for Victor, but he declined, explaining he would arrange for a rideshare driver to transport the children to the paternal grandmother, who was unable to drive, and have her monitor the visit. The Department later discovered Victor had not been using a rideshare driver; rather, Victor's friend Maria, whom the Department had denied as a monitor due to various safety concerns including her criminal history, had been transporting the children. Victor admitted he had not been forthright about using Maria to drive the children.

The Department concluded Victor had made insufficient progress toward completion of his court-ordered case plan services. It assessed the risk level of abuse and neglect if the children were returned to Victor's home as high. The Department recommended that the court terminate its jurisdiction, award sole legal and physical custody of the children to Leticia and restrict Victor to monitored visitation.

The section 364 review hearing took place on June 17 and 28, 2021. Leticia and the children's counsel agreed with the Department's recommendation that the court terminate its jurisdiction and award Leticia sole legal and physical custody. Victor's counsel, asserting it did not appear there was evidence Victor had a substance abuse problem, argued for termination of jurisdiction with joint legal and physical custody.

The juvenile court terminated jurisdiction and found it was in the children's best interests for Leticia to have sole legal and physical custody and Victor to have monitored visits. In its June 28, 2021 custody and visitation orders prepared on Judicial Council form JV-200 and related attachments, the court checked the preprinted boxes that Victor was to have only supervised visitation because he "has not completed" or "has not made substantial progress" in "the following court-ordered programs": drug and alcohol abuse treatment programs with random testing; individual counseling; conjoint counseling with Daisy when deemed appropriate; drug and alcohol program with aftercare; 12-step program with a court card and sponsor; and mental health counseling with a psychological evaluation and the taking of all prescribed medication.

## DISCUSSION

1. *Governing Law and Standard of Review*

When the juvenile court terminates dependency jurisdiction, the court "may issue . . . an order determining the custody of, or visitation with, the child." (§ 362.4, subd. (a).) Section 362.4 specifies that order "shall continue until modified or terminated by a subsequent order of the superior court" and directs the order be filed in a pending family law proceeding (§ 362.4, subd. (b)) or, if there is none, as part of a new family court file (§ 362.4, subd. (c)). (See *In re R.F.* (2021) 71 Cal.App.5th 459, 473 ["[s]ection 362.4 authorizes a juvenile court to issue exit orders for visitation and custody when terminating dependency jurisdiction, and those orders remain in place even after jurisdiction is terminated"]; see also *In re Destiny D.* (2017) 15 Cal.App.5th 197, 208 [referring to "the court's statutory discretion to impose necessary limitations on an

8

offending parent's contact with a dependent child before terminating its jurisdiction"].)

When making a juvenile court custody order pursuant to section 362.4, "it is the best interests of the child, in the context of the peculiar facts of the case before the court, which are paramount." (*In re John W.* (1996) 41 Cal.App.4th 961, 965; accord, *In re T.S.* (2020) 52 Cal.App.5th 503, 513; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)  "Unlike in family court, '"[t]he presumption of parental fitness that underlies custody law in the family court . . . does not apply to dependency cases" decided in the juvenile court.  [Citation.]' [Citation.] When the juvenile court makes custody or visitation orders as it terminates dependency jurisdiction, it does so as a court with 'a special responsibility to the child as *parens patriate* and [it] must look to the totality of a child's circumstances when making decisions regarding the child.'" (*In re J.T.* (2014) 228 Cal.App.4th 953, 963.)

We review a juvenile court custody or visitation order for abuse of discretion.  (*In re C.W.* (2019) 33 Cal.App.5th 835, 863; *In re M.R.* (2017) 7 Cal.App.5th 886, 902; see *In re T.H.* (2010) 190 Cal.App.4th 1119, 1124.)  "When applying the deferential abuse of discretion standard, 'the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.'" (*In re C.B.* (2010) 190 Cal.App.4th 102, 123; accord, *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712; see *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300-301 [in applying the law to the facts, we reverse under the abuse of discretion standard only if

the trial court "'''exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination''''"].)

2. *The Juvenile Court Did Not Abuse Its Discretion in Issuing Its Custody and Visitation Orders*

Victor contends the juvenile court abused its discretion in awarding Leticia sole legal and physical custody of the children, with only monitored visits for Victor, arguing there was no link between his alleged substance abuse (and, therefore, his failure to participate in a drug program with testing) and his ability to care for the children. Victor's argument, however, ignores the context of the court's orders.

There was ample evidence before the court that Victor, due to his impaired capacity to temper his emotional responses and moderate his behavior, had a limited ability to properly care for the children (particularly, Victor, Jr., who had his own special needs) and that awarding joint custody would endanger their physical and emotional well-being. That was the basis for the jurisdiction findings—made only six months before the custody and visitation orders—which we affirmed on appeal. The evidence of Victor's actions subsequent to the December 2020 jurisdiction and disposition hearing, far from establishing the court's custody and visitation orders were arbitrary or irrational, was fully consistent with those earlier findings: Victor's repeated failures to participate in a drug program ordered by the court to best protect the children's interests demonstrate Victor's unwillingness to respond appropriately to the court's concerns for his children's welfare and his ongoing impaired capacity to moderate his behavior to properly care for the children.

In addition, contrary to Victor's contention, there was substantial evidence in the record that Victor had a long-standing

substance abuse problem that he refused to acknowledge and failed to properly treat. As we pointed out in our prior opinion upholding the juvenile court's jurisdiction finding under section 300, subdivisions (b)(1) and (j), Victor had a history of substance abuse. Indeed, his own statements to the Department's social workers and investigators showed he had an extensive history of substance abuse that began as a teenager and continued into adulthood—a history of abusing not only alcohol but also prescription medication, methamphetamine and cocaine. After imbibing alcohol, he had more than once had physical altercations with Leticia, on one occasion while she was pregnant. Prior to the jurisdiction and disposition hearing the juvenile court had ordered the Department to refer Victor for random drug testing, but Victor had declined to participate with explanations the juvenile court could reasonably find not credible, including his series of excuses to one of the Department's social workers regarding purported transportation problems culminating in his failing to call her despite her offer to transport him on test dates herself. Even after the court ordered Victor to submit to random drug testing at the December 2020 jurisdiction and disposition hearing, Victor, for the period January 1, 2021 to June 2, 2021, continued to fail to do so and was a "no show" at least 17 additional times. Not only may the missed tests be reasonably construed as positive results (cf. *In re Noah G.* (2016) 247 Cal.App.4th 1292, 1303-1304), but his numerous and persistent failures to comply with the court-ordered drug treatment requirement are indicative of substance abuse (cf. *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1218 ["recurrent substance-related legal problems" as a manifestation of substance abuse].)

To be sure, as reported in a last minute information for the court filed June 29, 2021, Victor on June 21, 2021 claimed he had been turned away from the drug treatment center for testing because of his service dog. The treatment center, however, advised the social worker the following day that it was legally prohibited from refusing to assist a client because of a service or support animal if the client provided proper documentation. Advised by the social worker of the center's response, Victor responded, "[L]ike I said I'm not gonna go drug test for you for nobody else[;] the judge already made up her mind to come after me." "[W]hy I'm gonna waste my time doing that if the judge already has it against me."

Throughout this period Victor repeatedly told the Department he did not need to enroll in a drug treatment program because he had been sober for 20 years, and he persisted in his refusal to enroll. His failure to participate at all—let alone participate regularly and make substantive progress—in a court-ordered drug treatment program was properly considered by the court as evidence that return of the children to his custody (or unmonitored visitation) would be detrimental.

As discussed, beyond the issue of substance abuse, Victor had not completed, or made insufficient progress in, other aspects of his case plan, and he continued to have serious anger management, emotional stability and mental health issues. He failed to acknowledge his own responsibility for the children's removal from his custody, instead placing the blame on others. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"]; *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["denial is a factor often relevant to determining whether persons are likely to

12

modify their behavior in the future without court supervision"].) He had exposed his children to unnecessary risk by having them transported to visits by someone whom the Department, due to safety concerns, had rejected as a monitor, and he had not been forthright with the Department about having exposed his children to that risk. In contrast, all of the children—including Victor, Jr., who had not had any suicidal thoughts since being removed from Victor's custody—were happy, safe and doing well in the care of their mother, who had fully complied with the court's case plan. Daisy was also glad she was "no longer in the middle" of Victor and Leticia's conflict.

Victor points to other evidence in the record to argue the juvenile court's custody and monitored visitation orders constituted an abuse of discretion, including evidence he had complied with certain aspects of his court-ordered case plan (such as completion of a parenting program), had made progress during his counseling sessions, had a close relationship with his children and had acted appropriately during visits, as well as evidence, including his own statements to the Department, supporting his sobriety claim. This argument essentially invites us to reweigh the evidence and credibility determinations made by the juvenile court, tasks outside the province of a reviewing court. (See, e.g., *In re I.J.* (2013) 56 Cal.4th 766, 773 [""'issues of fact and credibility are the province of the trial court'""]; *In re Eli B.* (2022) 73 Cal.App.5th 1061, 1072 ["In reviewing the juvenile court's ruling we cannot reweigh the evidence or evaluate witness credibility"; "[w]e must uphold the juvenile court's factual determination as long as it is supported by substantial evidence "'even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it

believed other evidence""""]; *In re S.R.* (2020) 48 Cal.App.5th 204, 219 ["'[w]e do not reweigh the evidence'"].)

In sum, based on the totality of the circumstances, the juvenile court acted well within its discretion in concluding its custody and visitation orders were in the children's best interests.

## DISPOSITION

The juvenile court's June 28, 2021 orders are affirmed.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.